UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Bijan Elias,                                          Case No. 21-cv-1813 (WMW/TNL)

                    Plaintiff,

                                                      **ORDER**

     v.

UNUM Life Insurance Company of
America,

                    Defendant.

---

Before the Court are Plaintiff Bijan Elias's and Defendant UNUM Life Insurance Company of America's (UNUM) cross-motions for summary judgment.  (Dkts. 22, 27.) For the reasons addressed below, the Court denies Elias's motion for summary judgment and grants UNUM's motion for summary judgment.

**BACKGROUND**

Elias is an employee of Applera Corporation (Applera), who worked as a Field Sales Representative before being placed on disability leave on June 2, 2008.  UNUM is the insurer and claims administrator for Applera's employee benefit plan (Plan), which is governed by the Employee Retirement Income Security Act of 1974 (ERISA).  Under the terms of the Plan, UNUM and its affiliate, UNUM Group, have discretionary authority to make benefits determinations under the Plan, including determinations of benefits

eligibility.   The Plan provides that "[a]ll benefit determinations must be reasonable and based on the terms of the Plan and the facts and circumstances of each claim."

In relevant part, the Plan sets forth the following terms for benefits determinations. After 24 months of payments, a claimant is considered disabled under the Plan "when UNUM determines that, due to the same sickness or injury" that resulted in an initial finding of disability, the claimant is "unable to perform the duties of any gainful occupation for which [the claimant is] reasonably fitted by education, training or experience."  To be considered disabled under the Plan, a claimant must be under the regular care of a physician, which requires that the claimant:

> personally visit a physician as frequently as is medically required . . . to effectively manage and treat [the claimant's] disabling condition(s); and . . . receiv[e] the most appropriate treatment and care which conforms with generally accepted medical standards, for [the claimant's] disabling condition(s) by a physician whose specialty or experience is the most appropriate for [the claimant's] disabling condition(s).

The Plan also places limitations on the pay period for disabilities due to mental illness, limiting the lifetime cumulative maximum benefit period for all disabilities due to mental illness[1] to 24 months.

Elias stopped working for Applera on June 2, 2008, due to a number of mental health conditions including anxiety, depression, panic disorder, agoraphobia, and post-traumatic

---

[1]      The Plan defines mental illness as "a psychiatric or psychological condition classified in the Diagnostic and Statistical Manual of Mental Health Disorders (DSM), published by the American Psychiatric Association, most current as of the start of a disability. Such disorders include, but are not limited to, psychotic, emotional or behavioral disorders, or disorders relatable to stress."

stress disorder (PTSD).  After receiving short term disability payments for several months, Elias applied and was approved for long-term disability (LTD) benefits based on his depression and PTSD diagnoses.  Elias also was subsequently approved for Social Security Disability (SSD) benefits.

In December 2008, Elias presented for the first time with physical symptoms, including severe lower back pain and right shoulder pain.  An MRI of his lumbar spine in early 2009 revealed "L4–5 degenerative disk with disk height loss and degenerative L4–5 facet joints resulting in lateral recess stenosis bilaterally."  Elias's symptoms included radiating pain in his back and legs, along with intermittent numbness that left him periodically unable to get out of bed.

On August 27, 2010, UNUM sent Elias a letter explaining that the 24-month limitation on LTD benefits payable for mental illnesses would expire on November 28, 2010.  Nonetheless, UNUM stated that it would continue to review Elias's eligibility for benefits stemming from "any non-psychological medical conditions."  After the 24-month limitation on LTD benefits payable for mental illnesses elapsed, UNUM informed Elias that the LTD payments would be continued but did not specify what medical conditions UNUM's benefits extension was predicated on.  From 2010 through 2016, Elias continued to experience both mental and physical symptoms, and he was subsequently diagnosed with fibromyalgia, headaches, sleep apnea and chronic pain.

The parties disagree about the overall state of Elias's health in 2016 and 2017.  Elias asserts he experienced periods of improvement followed by periods of relapse in both

mental and physical illnesses.  To support this characterization, Elias points to a November 2017 Disability Status Update (DSU), which showed that Elias was subject to "no [behavioral] health restrictions," as well as a November 2017 doctor's report that Elias's chronic pain severely limited his mobility and that his degenerative disk condition was more pronounced than in 2009.  UNUM contends that Elias showed substantial improvement during this period, reporting to his physicians that he was able to perform all activities of daily living independently, was exercising two hours a day, and was moving to Florida.  To support their characterization of Elias's health, UNUM also identified social media postings from 2016 and 2017 showing that Elias purchased fitness equipment and traveled to Europe.

In early 2019, UNUM sent Elias multiple letters seeking status updates as to his physical infirmities to assess his disability status.  Elias did not respond to the letters or provide the requested updates.  After a year, UNUM suspended Elias's benefits due to Elias's failure to respond to its requests for information.  UNUM lifted the suspension one month later after receiving a DSU from Elias.  The update from Elias included an APS from his new treating physician, Dr. Sara Rahman, who identified "fibromyalgia, osteoarthritis and major depression" as Elias's diagnoses and "total body pain" as his symptoms.  Dr. Rahman's instructions limited Elias to one hour of work per day from July 6, 2020, through July 6, 2021, due to his physical conditions.  In her APS, Dr. Rahman reported that Elias appeared well, showed no acute distress and was awake and alert with normal speech and orientation.  Elias also self-reported that he required the use of assistive

devices such as a cane and spent most of his day in bed due to severe pain and low blood pressure.

In September 2020, Elias returned to Dr. Rahman, who noted that Elias had recently started taking high-dose prescription vitamin D and Lyrica, which had reduced his bone pain up to 80 percent and his whole-body pain to some degree. Dr. Rahman further noted that Elias reported that his current treatments were satisfactory. However, Elias reported his pain to be an eight out of ten in his neck, midback, head, legs and spinal cord during his examination. Elias also reported 20 falls in the past year due to low blood pressure, none of which required medical intervention. In October 2020, Elias visited Dr. Christine Suydam for an initial psychiatric evaluation. Dr. Suydam reported that Elias's physical conditions were still disabling but Elias denied feeling depression or anxiety and did not want his medication altered.

As part of UNUM's periodic review of Elias's LTD benefits, UNUM used Amanda Marosy, a vocational rehabilitation consultant, to identify the physical demands of Elias's occupation. Marosy identified the physical duties of a Sales Representative (General) as entailing exertion up to 20 pounds occasionally and 10 pounds frequently; frequent traveling, sitting, reaching downward, keyboard use, far acuity depth perception, visual accommodation, color vision and field of vision. In November 2020, UNUM asked Elias's physician, Dr. Rahman, to confirm that Elias's physical conditions precluded him from performing these physical job duties. Dr. Rahman responded that she had "no opinion" on Elias's "functional capacity."

UNUM subsequently referred Elias's medical records to Alyssa Jackson, a registered nurse, for an opinion about whether Elias had the functional capacity to perform his occupational demands on a full-time basis. Jackson opined that, based on Elias's recent medical records, particularly his 80 percent improvement in pain and normal physical condition in examinations, he could return to work. UNUM subsequently discontinued Elias's LTD benefits effective January 6, 2021, in a multi-page letter explaining its decision.

Elias appealed UNUM's decision to discontinue his LTD benefits through UNUM's administrative process. In his appeal, Elias broadly asserted that UNUM's benefits determination was improper. In particular, Elias asserted that his pain was so severe that he was seeking permission to end his life through Washington's Death with Dignity Act,[2] although he did not provide documentation to support this representation. Elias also clarified that the 80 percent reduction in pain discussed at his previous visit to Dr. Rahman was limited to his fingers only.

As part of UNUM's review of the appeal, UNUM referred the case to Megan Yeaton, a registered nurse, for review. Despite Elias's representations in his appeal, Nurse Yeaton concluded that Elias could perform his occupation and demands based on her review of the full record. Following Nurse Yeaton's review, UNUM received a treatment

---

[2]    The Washington Death with Dignity Act requires certification by an attending physician that the patient has a terminal disease and examination by a consulting physician who must confirm that attending physician's diagnosis that the patient is suffering from a terminal disease and verify that the patient is competent, acting voluntarily and has made an informed decision. RCW 70.245.020; 70.245.050.

note from Dr. Rahman, who had seen Elias through videoconference on February 24, 2021. Elias described back pain, neck pain and "all over body muscle pains," which he described as severe and restrictive, as well as other symptoms including fatigue, fainting, headaches and sleep apnea.  In her treatment note, Dr. Rahman noted that Elias was not on chronic narcotic management for pain, that the last imaging of his cervical spine was in 2013 and that surgical intervention would benefit Elias's quality of life.

UNUM then submitted Elias's file, including the February 2021 treatment note from Dr. Rahman to Dr. Suzanne Benson, M.D., who holds a sub-specialty in Pain Medicine, for a review of Elias's file.  Dr. Benson provided a substantial analysis of Elias's physical conditions, but ultimately concluded that Elias was not precluded from performing the occupational demands of a Sales Representative.  Dr. Benson contacted Dr. Rahman in March 2021 to determine whether Dr. Rahman agreed with her opinion and, if not, the rationale for her differing opinion.  Dr. Rahman disagreed with Dr. Benson's conclusion, explaining that Elias "can rarely exert 10 pounds of force due to fibromyalgia pain and bilateral weakness of arms," that Elias cannot sit longer than 30 minutes due to back pain and that he has been unable to get his mail at times because the symptoms are so severe. Dr. Benson considered Dr. Rahman's response but maintained her initial determination that Elias could perform the occupational demands of his job and noted that no new clinical information was submitted by Dr. Rahman.  UNUM denied the appeal and affirmed its decision to discontinue benefits in an April 2021 10-page letter.

Elias subsequently commenced this action on August 9, 2021, alleging that UNUM wrongly denied him benefits under the Plan, in violation of ERISA, 29 U.S.C. § 1132(a)(1)(B). Elias seeks a declaration from the Court that he is entitled to ongoing benefits so long as he remains "disabled" under the terms of the plan. The parties subsequently filed cross-motions for summary judgment.

## ANALYSIS

Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, there is "no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Windstream Corp. v. Da Gragnano*, 757 F.3d 798, 802–03 (8th Cir. 2014).[3] A genuine dispute as to a material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To defeat a motion for summary judgment, the opposing party must cite with particularity those aspects of the record that support any assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1)(A).

---

[3]     In its motion for summary judgment, UNUM relies on the law of the United States Court of Appeals for the Second Circuit for the governing legal standards. The Plan provides that its "Governing Jurisdiction" is Connecticut, but UNUM does not provide any argument or authority to support its reliance on Second Circuit, rather than Eighth Circuit, law in this diversity case. Because the relevant legal standards are substantively identical, and in the absence of authority that requires application of Second Circuit law, this court will look to Eighth Circuit law in deciding this case

An ERISA plan beneficiary has the right to judicial review of a benefits determination.  *See* 29 U.S.C. § 1132(a)(1)(B).  In ERISA cases, district courts review a benefits determination under an abuse-of-discretion standard[4] when the plan gives either the plan administrator or fiduciary discretionary authority to determine eligibility or to construe the terms of the plan.  *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  In this case, the parties agree that the Plan grants UNUM discretionary authority to make benefits determinations and, accordingly, that the abuse-of-discretion standard applies.

Under an abuse-of-discretion standard, a court must uphold a plan administrator's decision so long as the administrator provides a "reasonable explanation for its decision, supported by substantial evidence." *Ratliff v. Jefferson Pilot Fin. Ins. Co.*, 489 F.3d 343, 348 (8th Cir. 2007).  Substantial evidence is "more than a scintilla but less than a preponderance." *Leonard v. Sw. Bell Corp. Disability Income Plan*, 341 F.3d 696, 701 (8th Cir. 2003) (internal quotation marks omitted).  In assessing a plan administrator's decision, a district court must focus on whether a "reasonable person *could* have reached a similar decision . . . not [whether] a reasonable person *would* have reached that decision." *Phillips-Foster v. UNUM Life Ins. Co. of Am.*, 302 F.3d 785, 794 (8th Cir. 2002) (internal quotation marks omitted).  A reviewing court should not "disturb a decision supported by

---

[4]     This standard is referred to interchangeably as the abuse-of-discretion standard and the arbitrary and capricious standard. *See Schatz v. Mut. of Omaha Ins. Co.*, 220 F.3d 944, 947 n.4 (8th Cir. 2000) (explaining that the circuit court uses the terms "abuse of discretion" and "arbitrary and capricious" interchangeably when evaluating ERISA cases).

a reasonable explanation even though a different reasonable interpretation could have been made." *Clapp v. Citibank, N.A. Disability Plan*, 262 F.3d 820, 828 (8th Cir. 2001) (internal quotation marks omitted).

Elias argues that UNUM abused its discretion in making a benefits determination in his case because UNUM: (1) ignored evidence of Elias's disability, (2) failed to demonstrate substantial evidence of an improvement in Elias's condition, (3) did not consider the combined effects of Elias's conditions, (4) unreasonably relied on a paper review conducted by its medical consultant and (5) failed to review Elias's appeal fully and fairly. Elias also contends that UNUM improperly applied the mental health limitation in the Plan and that UNUM has a history of biased claims administration that this Court should consider when assessing the denial of Elias's claim. In response, UNUM contends that it did not abuse its discretion in discontinuing payment of Elias's LTD benefits because: (1) Elias did not establish his entitlement to continued benefits payments, (2) the opinions of medical consultants supported UNUM's benefits decision and (3) Elias has not otherwise established that UNUM abused its discretion in discontinuing Elias's benefits.

## I.   UNUM's Review of Elias's Benefits

Elias argues that UNUM ignored evidence of Elias's disability when deciding to discontinue his benefits, instead relying on selective evidence from the July 2020 DSU, as well as Dr. Rahman's September 2020 treatment note. Specifically, Elias argues that UNUM failed to consider evidence in the record that Elias reported spending most of the day in bed, was using a cane and hearing aids, experienced frequent falls and self-reported

his current pain as an 8 out of 10 during his September 2020 visit with Dr. Rahman. UNUM responds to these arguments by asserting that administrators may exercise discretion in determining whether a claimant's evidence is sufficient to support his claim—particularly when the claimant provides conflicting evidence about the extent of his disability—and that Elias did not satisfy his burden of establishing his ongoing disability in this case.

ERISA mandates that plans must provide "adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." 29 U.S.C. § 1133(1). While "[p]lan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence," courts may not "impose on plan administrators a discrete burden of explanation when they credit reliable evidence." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).

UNUM's letter discontinuing Elias's LTD benefits does not support a conclusion that UNUM arbitrarily refused to credit reliable evidence. The letter indicates that UNUM considered Dr. Rahman's progress note holistically before concluding that Elias has the functional capacity to perform the demands of his occupation. In fact, the letter specifically addresses evidence that Elias claims was ignored, such as his history of prior falls. While not all the evidence that Elias cites is specifically addressed in UNUM's letter discontinuing benefits, UNUM is under no obligation to explain the weight given to each piece of evidence. *See Nord*, 538 U.S. at 834. If the evidence UNUM cites provides a

"reasonable explanation for its decision, supported by substantial evidence," Elias cannot demonstrate that UNUM abused its discretion. *Ratliff*, 489 F.3d at 348. UNUM's letter discontinuing benefits describes the evidence supporting its decision, including that Elias was able to live alone and perform household chores, Elias did not require an assistive device to ambulate, Elias could drive and could walk several blocks, the results of Elias's physical exam were normal, that Elias was not in any pain management treatment and Elias reported an 80 percent reduction in pain after treating with vitamin D supplements and Lyrica. UNUM's letter also considered Elias's SSD benefits and explained why UNUM's decision differed from the Social Security Administration's decision. Based on the numerous justifications provided, UNUM's letter includes a reasonable explanation supported by substantial evidence, and Elias has not shown that UNUM abused its discretion by discontinuing his LTD benefits. *See Ratliff*, 489 F.3d at 348.

Elias also argues that UNUM abused its discretion by ignoring evidence of his disability during the appeal process. Elias asserts that UNUM improperly discounted Dr. Rahman's opinions submitted during the appeal; that the medical consultant that UNUM retained for the appeal conducted an improper, incomplete and selective review of Elias's medical record; and that UNUM terminated benefits on misconstrued and misstated evidence.

Here, the evidence does not show that UNUM's actions during the appeal process demonstrated an abuse of discretion for any of the aforementioned reasons. As Elias concedes, an administrator need not accord special deference to a treating physician's

opinion. *Nord*, 538 U.S. at 825. Instead, an administrator abuses its discretion only when it arbitrarily refuses to credit a claimant's reliable evidence. *Id.* at 834. There is no evidence that UNUM arbitrarily refused to credit Elias's evidence in this case. Indeed, UNUM submitted the appeal file for review by two medical consultants who provided detailed analysis addressing why their conclusions differed from Dr. Rahman's and who refer repeatedly to details included in Elias's medical records. A plan administrator does not abuse its discretion in finding that an employee is not disabled when the record reflects conflicting medical opinions. *See Delta Family–Care Disability & Survivorship Plan v. Marshall*, 258 F.3d 834, 843 (8th Cir. 2001). The record in this case demonstrates such conflicting opinions. Dr. Rahman disagreed with Dr. Benson and the other medical professionals retained by UNUM. Even Dr. Rahman's opinions are contradictory, as her opinion on Elias's functional capacity changed between UNUM's initial benefits determination and UNUM's review of Elias's appeal. With conflicting evidence of this nature on the record, the Court cannot find that UNUM abused its discretion. *Id.*

Moreover, Elias misstates the scope of the review conducted by Dr. Benson, UNUM's consultant. Elias contends that Dr. Benson reviewed only two medical records—a 2016 visit to Dr. Rahman and an October 2020 visit to a psychiatrist, Dr. Suydam. Based on this contention, Elias asserts that reviewing only two medical records is insufficient. However, Dr. Benson's analysis pertains to Elias's doctor visits on March 25, 2020; July 6, 2020; September 16, 2020; October 13, 2020 and February 4, 2021. Dr. Benson also appears to analyze every medical appointment that Elias had during 2020 and 2021. And

Dr. Benson could not analyze any doctor's visit in 2019 and early 2020 because Elias did not provide any medical records to UNUM from that time period. Because Dr. Benson's review assessed all, or nearly all, of Elias's documented medical visits within the last three years, Elias does not establish that Dr. Benson's review was incomplete and selective. *Cf. Willcox v. Liberty Life Assur. Co. of Bos.*, 552 F.3d 693, 702 (8th Cir. 2009) (finding doctor's report incomplete and selective when his analysis suggested failure to read underlying medical report).

Elias also fails to demonstrate that UNUM terminated his benefits based on misstated evidence, as UNUM appropriately relied on the medical records that Elias himself submitted. Elias argues that UNUM's denial was improperly premised on the 80 percent reduction in pain after beginning Lyrica and Vitamin D reported by Elias's physician, Dr. Rahman. In particular, Elias contends that he subsequently clarified in his appeal that the 80 percent reduction was limited to his finger joints. Although the parties dispute how Dr. Rahman's written statements should be interpreted in light of Elias's statements on appeal, neither party disputes what Dr. Rahman wrote in Elias's records. And in completing its review of Elias's benefits, UNUM was entitled to rely upon the statements of Elias's treating physician. Elias's disagreement with how Dr. Rahaman's statements should be interpreted is not sufficient to show that UNUM misstated the record in denying his appeal.[5]

---

[5]   Notably, Dr. Rahman never revised or corrected her notes to confirm Elias's statement on appeal that the pain relief was limited in nature.

Accordingly, as a reasonable person could have reached the same conclusion regarding Dr. Rahman's note on Elias's pain reduction, Elias has not demonstrated that UNUM abused its discretion by ignoring evidence of Elias's disability. *Wakkinen v. UNUM Life Ins. Co. of Am.*, 531 F.3d 575, 583 (8th Cir. 2008) (explaining that courts considering denials of benefits under ERISA should determine only whether a reasonable person could have—not would have—reached a similar decision).

Therefore, UNUM did not abuse its discretion by ignoring evidence of Elias's disability.

## II.   Improvement in Elias's Condition

Elias argues that UNUM's failure to provide evidence of an improvement in his condition makes the termination unreasonable and an abuse of UNUM's discretion. In support of this assertion, Elias relies on *McOsker v. Paul Revere Life Insurance Co.*, in which the Eighth Circuit reasoned:

> We are not suggesting that paying benefits operates forever as an estoppel so that an insurer can never change its mind; but unless information available to an insurer alters in some significant way, the previous payment of benefits is a circumstance that must weigh against the propriety of an insurer's decision to discontinue those payments.

279 F.3d 586, 589 (8th Cir. 2004). But Elias's situation is distinguishable from the facts in *McOsker*. In *McOsker*, there was no change in the opinions that the plaintiff's doctors had consistently rendered regarding the plaintiff's disability status. *Id.* Here, in contrast, Elias reported improvements between 2016 and 2021 that affected his benefits determination. For example, Elias reported to doctors in 2016 and 2017 that he was

exercising two hours per day and was able to independently perform all activities of daily living.  In September of 2020, Dr. Rahman reported that Elias's bone pain had improved by 80 percent, that Lyrica had improved his fibromyalgia symptoms and that taking Adderall for his blood pressure was helping manage his low blood pressure.  In Dr. Rahman's report, she notes that Elias reported that "his current treatments are satisfactory." Further, when Dr. Rahman's opinion on Elias's functional capacity was first requested in December 2020, she stated that she had "no opinion" on Elias's functional capacity.  Based on these substantial developments in Elias's symptoms, *McOsker* is distinguishable.  Elias cannot demonstrate that UNUM's decision to terminate his benefits was an abuse of discretion.  *See Kraus v. Ascension Health Long Term Disability Plan*, No. 15-cv-0718, 2016 WL 4061880, at *13 (E.D. Mo. July 29, 2016) (finding no abuse of discretion for discontinuing benefits that were previously awarded when the change in decision was based on new medical documentation).

Accordingly, UNUM did not abuse its discretion by failing to identify a substantial change in Elias's symptoms.

### III.    The Combined Effect of Elias's Multiple Conditions

Elias also contends that UNUM abused its discretion by failing to consider the combined effects of Elias's multiple conditions.  Elias notes that he suffers from fibromyalgia, degenerative disc disease and related infirmities and chronic daily headaches.  He asserts that UNUM did not consider the combined effects of his conditions, because UNUM's letter and consultant reports commented on each condition individually.

In support of his argument, Elias cites *Turner v. Retirement & Benefit Plans Committee Robert Bosch Corp.*, 585 F. Supp. 2d 692, 703 (D.S.C. 2007), finding that plan administrators must evaluate the possibly disabling effects of all medical conditions taken together, as well as *Layton v. Heckler*, 726 F.2d 440, 442 (8th Cir. 1985), stating generally that ERISA claimants are entitled to have their disability measured in terms of total well-being.

The evidence in this case indicates that, consistent with this case law, UNUM performed a holistic review of Elias's medical conditions and their impact on his functional capacity. For example, in UNUM's letter discontinuing LTD benefits, UNUM refers to portions of the medical records that describe Elias's overall capacity, such as his ability to live alone, shop for himself and perform household chores. But UNUM does not address how particular infirmities affected Elias's overall health. In addition, Dr. Benson's analysis during Elias's appeal expressly states that her opinion is based on "a whole person analysis." The evidence supports the conclusion that UNUM made a holistic determination as to Elias's total well-being and capacity to perform the demands of his occupation. *See Layton*, 726 F.2d at 442.

The record establishes that, when making its benefits determination, UNUM did not abuse its discretion by failing to consider the combined effects of Elias's conditions.

## IV.    Reasonableness of UNUM's Review

Elias next argues that UNUM abused its discretion because Dr. Benson's review during Elias's appeal was flawed and unreasonable. This argument is premised primarily

on the fact that Dr. Benson conducted only a paper review of Elias's medical file, without speaking to Elias or conducting a physical examination. Elias contends that his physicians have uniformly opined since 2008 that he is unable to work, and that UNUM abused its discretion by dismissing Dr. Rahman's opinion in favor of Dr. Benson's opinion. *See Coker v. Metro Life Ins. Co.*, 281 F.3d 793, 799 (8th Cir. 2002) (finding that district courts should give greater weight to doctors who have physically examined the claimant).

UNUM maintains that the evidence Elias provided fails to establish his ongoing disability. Elias had seen Dr. Rahman only two times before his February 2021 appeal, which, according to UNUM, diminished the value of her opinion. UNUM also considered that, as board-certified physician in Physical Medicine & Rehabilitation and Electrodiagnostic Medicine who holds a sub-specificity in Pain Medicine, Dr. Benson was specifically qualified to assess Elias's medical condition. Further, UNUM explains, Dr. Benson was one of three medical consultants who reviewed Elias's file and determined Elias was no longer disabled from performing his own occupation as of January 2021.

Although the opinions of doctors who conduct physical examinations are entitled to more weight than those who do not, *see Coker*, 281 F.3d at 799, physical examinations are not required in every case. *Sawiers v. Qwest Disability Servs., Inc.*, 413 F. Supp. 2d 1030, 1038 (D. Minn. 2006). UNUM submitted Elias's file to three consultants, each of whom concluded that Elias could perform the obligations of his job. In addition, Dr. Rahman, who had only recently become Elias's primary care provider, rendered inconsistent assessments of Elias's disability. On December 4, 2020, Dr. Rahman indicated that she

had "no opinion on [Elias's] functional capacity."  Only after Elias filed his appeal in February 2021 did Dr. Rahman indicate that she did not believe Elias had the functional capacity to perform the occupational demands of his position.  These facts undermine the weight that Dr. Rahman's opinion would be afforded as the physician who conducted an in-person examination.  *See Cooper v. Metro. Life. Ins. Co.*, 862 F.3d 654, 662 (8th Cir. 2017) (finding that plan administrators are not obliged to accord special deference to the opinions of treating physicians when there is a disagreement between treating physician and insurer's physician as to claimant's functional capacity based on objective evidence in medical records).  Although Elias has significant mental and physical health challenges, Elias has not established that UNUM's decision after a review of his file constitutes an abuse of discretion.  *See Schatz v. Mut. Of Omaha Ins. Co.*, 220 F.3d 944, 949 (8th Cir. 2000) ("Provided the decision is supported by a reasonable explanation, it should not be disturbed, even though a different reasonable interpretation could have been made.") (internal quotation marks omitted).

Therefore, the Court finds that UNUM did not abuse its discretion by conducting a flawed and unreasonable review.

### V.    Full and Fair Review of Elias's Claim

Elias also contends that UNUM abused its discretion by failing to review his appeal fully and fairly because UNUM did not provide Elias with the opportunity to review and respond to Dr. Benson's report.  Under 29 C.F.R. § 2560.503-1(h)(4), claimants have certain rights to a full and fair review, such as the right to submit information to the plan

administrator for consideration, the right of access to obtain relevant information from the plan administrator and the right to have the plan administrator consider the information submitted by the claimant. Before 2018, the question of whether these full and fair review rights applied to appeals of benefits determinations was unsettled. Both parties agree this regulation was clarified in 2018 to expressly extend the right of a full and fair review to appeals of benefits determinations when the initial claim was filed after April 1, 2018. But the parties dispute whether full and fair review rights exist on appeal when the initial claim was filed before April 1, 2018.

In assessing whether full and fair review rights exist on appeal for claims filed before April 1, 2018, Elias asks the Court to rely on *Hughes v. Hartford Life & Accident Ins. Co.*, 368 F. Supp. 3d 386, 394 (D. Conn. 2019). In *Hughes*, the court held that a claimant who had filed her initial claim before 2018 had a right of access to obtain information from the plan at the appeal stage. *Id.* UNUM argues that Elias's reliance on *Hughes* is misplaced because the *Hughes* decision has been overruled by the Second Circuit. *See Mayer v. Ringler Assocs.*, 9 F.4th 78, 86–88 (2d Cir. 2021). Therefore, the question before the court is whether *Hughes* remains persuasive authority.

As *Mayer* explicitly states, and this Court agrees, the version of 29 C.F.R. § 2560.503-1(h)(4) in effect before 2018 "does not require [a plan administrator] to produce documents developed or considered during the administrative appeal before rendering its final determination." 9 F.4th at 86–88. In light of this conclusion, Elias's argument that UNUM abused its discretion by denying him a full and fair review on appeal

is unavailing.  Concluding that full and fair appeal rights are not present for claims filed before 2018 also is fully consistent with the other circuits that have addressed this question. *See Zall v. Standard Ins. Co.*, No. 21-cv-0019, 2021 WL 6112638, at *7 (W.D. Wis. Dec. 27, 2021) (collecting cases from D.C., Third, Fifth, Sixth, Eighth, Tenth and Eleventh Circuits).  Because Elias offers no viable case law to support his argument, the weight of legal authority supports this Court's conclusion that Elias cannot establish an abuse of discretion on this ground.

Accordingly, UNUM's review of Elias's claim on appeal did constitute an abuse of discretion.

### VI.    UNUM's Application of the Mental Health Limitation

Elias also contends that UNUM incorrectly applied the Plan's mental health limitation.  The Plan provides that "[t]he lifetime cumulative maximum benefit period for all disabilities due to **mental illness** is 24 months."  Despite UNUM notifying Elias that his claim for PTSD and depression "reached the maximum duration for benefits . . . on November 28, 2010," Elias argues that UNUM continued to approve his claim for more than 10 years after the mental health limitation would have precluded a claim based solely on mental health benefits.  Elias contends that to enforce the mental health limitation now after paying benefits for ten years is arbitrary and capricious.

UNUM disagrees on two grounds.  First, UNUM argues that it notified Elias in August of 2008 that the 24-month mental health limitation would expire in 2010 but stated that it would continue to review Elias's eligibility for benefits because of "any non-

psychological medical conditions."  UNUM asserts that this interpretation is consistent with the terms of the mental health limitation, which provides that 24 months is the "lifetime cumulative maximum benefit period for all disabilities due to mental illness." The Court agrees.  UNUM's actions are in accord with the Plan's 24-month mental health limitation on disability payments.  Elias does not dispute that UNUM expressly informed him that the 24-month mental health limitation would be exhausted as of 2010 and that any benefits awarded after 2010 would be based on "non-psychological medical conditions." With this additional context, UNUM's actions are fully consistent with the plain language of the mental health limitation, which provides that the provision functions as a "lifetime cumulative maximum" on the payment of benefits for mental illness disabilities.  *See Vercellino v. Optum Insight, Inc.*, 26 F.4th 464, 468 (8th Cir. 2022) (recognizing that "courts are to enforce the plain language of an ERISA plan in accordance with its literal and natural meaning.") (quotation omitted).  Because the limitation was exhausted in 2010, the subsequent benefits payments were based not on Elias's mental illnesses, but on his physical infirmities.  This is confirmed by UNUM's representations that any payments made after 2010 would be based on "non-psychological medical conditions."

Second, to the extent Elias contends that the 24-month mental health limitation applies only when the claim is based exclusively on mental health conditions, the plain language of the provision belies this contention.  The provision includes no statement indicating that the mental health illnesses must be the exclusive disability underlying the claim. *See Vercellino*, 26 F.4th at 468.  Rather, the plain language of the limitation provides

the "lifetime cumulative maximum" for all disabilities due to mental illness and would encompass claims premised on both physical and mental disabilities. *Id.*

The Court finds, therefore, that UNUM appropriately applied the Plan's mental health limitation.

### VII.    UNUM's History of Bias

Finally, Elias argues that UNUM has a significant history of biased claims administration that the Court should consider in assessing whether UNUM abused its discretion. *See Chronister v. UNUM Life Ins. Co. of Am.*, 563 F.3d 773, 776 (8th Cir. 2009) ("UNUM's history of arbitrarily denying claims such as [Plaintiff's] is another factor that the Court must consider in determining whether UNUM abused its discretion in denying [the] claim.").  UNUM responds that the cases on which Elias relies predate more recent cases that recognize UNUM's history of biased administration is well in the past. *See Jones v. UNUM Provident Corp.*, 596 F.3d 433, 438 (8th Cir. 2010).

The Eighth Circuit has declined to consider UNUM's claims administration history for claims filed after 2005, as it acknowledged that UNUM's period of biased claims administration ended before 2003. *See Jones*, 596 F.3d at 438.  Here, Elias filed his claim in 2008 and UNUM did not discontinue Elias's benefits until 2021.  Elias provides no evidence that UNUM has a history of biased claims administration during that period.

Therefore, in accordance with *Jones*, Elias's arguments with respect to UNUM's history of claims administration is insufficient to justify finding UNUM has abused its discretion.

Accordingly, Elias's motion for summary judgment as to his LTD benefits claim is denied, and UNUM's motion for summary judgment as to Elias's LTD benefits claim is granted.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Plaintiff Bijan Elias's motion for summary judgment, (Dkt. 22), is **DENIED**.

2. Defendant UNUM's motion for summary judgment, (Dkt. 27), is **GRANTED**.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated:  January 24, 2023                                    s/Wilhelmina M. Wright
                                                            Wilhelmina M. Wright
                                                            United States District Judge